IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JIMMY DALE MILLER,

        Plaintiff,

        v.

NANCY BERRYHILL,
Acting Commissioner of the Social
Security Administration,

        Defendant.

Civ. No. 6:15-CV-02152-JR

FINDINGS AND
RECOMMENDATION

RUSSO, Judge:

    Plaintiff Jimmy Miller brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Title II Disability Insurance Benefits under the Social Security Act ("Act"). For the reasons set forth below, the Commissioner's decision should be affirmed and this case dismissed.

1 – FINDINGS AND RECOMMENDATION

# PROCEDURAL BACKGROUND

On May 19, 2014, plaintiff applied for Disability Insurance Benefits. Tr. 145-46. His application was denied initially and upon reconsideration. Tr. 105-09. On May 27, 2015, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 39-65. On June 25, 2015, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 14-38. After the Appeals Council denied his request for review, plaintiff filed a complaint in this Court.[1] Tr. 1-4.

# STATEMENT OF FACTS

Born on April 20, 1981, plaintiff was 29 years old on the alleged onset date of disability and 34 years old at the time of the hearing. Tr. 38, 67. He earned a GED and attended college classes. Tr. 61. Plaintiff previously worked in construction and drywall installation. Tr. 32. Plaintiff alleges disability as of December 2, 2010, due to anxiety, depression, anger problems, suicidal tendencies, nightmares, cold sweats, and chronic pain. Tr. 67, 165, 200.

# STANDARD OF REVIEW

The Court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotations

---

[1] The record before the Court constitutes over 800 pages, but with multiple incidences of duplication. Where evidence occurs in the record more than once, the Court will generally cite to the transcript pages on which that information first appears.

omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir.1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment, he is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(f). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national or local economy. Yuckert, 482 U.S. at 141-42; 20 C.F.R. § 404.1520(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566.

## **THE ALJ'S FINDINGS**

At step one of the five-step sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 19. At step two, the ALJ determined plaintiff had the following medically determinable, severe impairments: depression, post-traumatic stress disorder, and varus alignment of the left knee. Id. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 19-21.

Because he did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform sedentary work, except that:

> The claimant is further limited to no more than occasional kneeling, crouching, crawling or occasional climbing of stairs and ramps. The claimant is further limited to no more than frequent stooping or balancing, and is precluded from climbing ladders, scaffolds and ropes. The claimant is also limited to simple, repetitive, routine tasks requiring no more than occasional, brief interaction with co-workers. Additionally, the claimant would need to avoid working in an environment where there is any direct public contact with the general public.

Tr. 21.

At step four, the ALJ determined plaintiff was unable to perform his past relevant work. Tr. 32. At step five, the ALJ found, based on the VE's testimony, that there exists a significant number of jobs in the national and local economy that plaintiff could perform despite his impairments, such as small parts assembler, optical assembler, and weight tester. Tr. 32-33.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) finding him not fully credible; (2) rejecting the Veterans Affairs' (VA) 100% disability rating; (3) improperly assessing medical evidence from Chelsea Brandenburg, LMFT; (4) disregarding the lay witness statement of his sister; and (5) rendering an invalid step five finding. Pl.'s Br., pp. 11-12.

**I.  Plaintiff's Testimony**

Plaintiff asserts the ALJ wrongfully discredited his subjective symptom testimony concerning the severity of his impairments. Id. at p. 15. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); SSR 16-3p, available at 2016 WL 1119029. The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the

5 – FINDINGS AND RECOMMENDATION

"ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

At the hearing, plaintiff testified he is unable to work as the result of an accident that occurred during basic training with the National Guard in September 2009. Tr. 45. He alleges injuries to his knee, hip, shins, feet, and lower back that prevent him from walking without a limp, or standing or sitting for long periods of time. Tr. 45-48, 200. As a result, plaintiff "spent a couple of years on [his] dad's couch." Tr. 46. When the ALJ asked whether plaintiff had sought out or applied for work, he answered that he "can't physically do it." Tr. 48.

Plaintiff also testified that his anxiety makes him "freak out" such that he cannot breathe or stop shaking, and his anger "just explodes," leading him to "get mouthy" and tell others to "shut up." Tr. 55. According to plaintiff, he has "a hard time being out in public" and stays in his house "as much as possible," locking himself in his bedroom when more than one person is around. Tr. 53, 56-57. In addition, plaintiff remarked that his depression bars him from working because he lacks motivation, concentration, and focus. Tr. 48-49, 57, 200.

After summarizing his hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but that his statements regarding the extent of those symptoms were not fully credible due to his activities of daily living, the lack of corroborating medical evidence, and his tendency to exaggerate. Tr. 23-29. Activities of daily living may support an adverse credibility finding when they contradict the claimant's testimony. Molina v. Astrue, 674 F.3d 1104, 1112-13 (9th Cir. 2012). A lack of corroborating objective medical evidence is another factor the ALJ can

consider, although it cannot be the sole basis for discounting a claimant's testimony. Burch, 400 F.3d at 681.

Notably, the ALJ discredited plaintiff's testimony because it was inconsistent with his range of activities. Tr. 27. Substantial evidence supports the ALJ's decision in this regard. For instance, plaintiff was physically and mentally capable of going to school and maintaining employment for a significant period following the alleged onset date of his disability. He attended community college for three years (from December 2011 to January 2015). Tr. 52, 190, 202, 544. Plaintiff also worked at least a year and a half at the VA (from December 2011 to June 2013), sought volunteer positions in November 2013, and volunteered at his child's school at least three times per week in December 2014. Tr. 115, 146, 190, 202, 246, 336, 764. Not only did plaintiff carry on these activities for a long duration, he sometimes did so at a high intensity, attending college full-time while working 20-25 hours per week. Tr. 301. Although plaintiff allegedly lacked motivation and focus, the record suggests he was fairly successful academically. Tr. 256, 301. Moreover, plaintiff engaged in a variety of activities in and around the house, including regular meal preparation, laundry, dog-walking, and cleaning. Tr. 201-03, 210-11. He left the house regularly and transported himself to various destinations, including frequent medical appointments in Roseburg, Oregon, without assistance. Tr. 50, 203, 211, 601.

Other activities further refute plaintiff's claims of debilitating anxiety and depression. Namely, he has been caring for his two nephews and undertook the cumbersome process of working with government agencies to adopt them. Tr. 748, 752, 764. He also engaged in activities that require him to be in the presence of others and interact, such as attending parent teacher conferences and going to the park. Tr. 50-51, 57-58, 203, 211, 764. As the ALJ correctly

7 – FINDINGS AND RECOMMENDATION

concluded, this evidence belies plaintiff's hearing statements concerning the extent of his physical and mental impairments.

Significantly, plaintiff does not dispute the foregoing facts. Rather, he attempts to cast them in a more favorable light, arguing that the ALJ failed to acknowledge his heavy reliance on his father and brother for assistance parenting, shopping, and carrying out household chores. Pl.'s Br., pp. 16-17. Plaintiff also emphasizes that he ultimately left both college and his work study position. Id. at 17. The mere fact plaintiff struggled with certain activities, however, does not indicate plaintiff is disabled. Molina, 674 F.3d at 1113. Further, plaintiff's alternative interpretation of the record does not negate the ALJ's reasonable interpretation of the record. See Febach v. Colvin, 580 Fed.Appx. 530, 531 (9th Cir. 2014) (ALJ is not required to accept a claimant's attempt to characterize activities as consistent with disability where those activities "could also reasonably suggest" greater functional abilities) (citing Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1198 (9th Cir. 2004)).

Moreover, the ALJ found plaintiff's testimony contradicted the overall medical record. Tr. 23. Here, the ALJ thoroughly detailed, over the course of four single-spaced pages, objective evidence countering plaintiff's testimony. For example, imaging of plaintiff's left knee and legs taken immediately after his September 2009 injury were relatively normal. Tr. 44-45, 674. Subsequent x-rays were similarly unremarkable. See, e.g., Tr. 251, 378, 383, 674. Other examinations revealed no significant strength, motor, sensory, or movement limitations. See, e.g., Tr. 240-41, 245-46, 383, 479-481, 548, 567, 676-77, 679. While plaintiff testified that orthopedic specialists recommended knee surgery, the most recent orthopedic chart notes suggest otherwise. Tr. 46, 241. Specifically, after a March 2010 exam, Mathew Shapiro, M.D., remarked

he could not "account anatomically for [plaintiff's] extreme amount of pain" and thus recommended discharging plaintiff without further treatment. Id.

In sum, the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's subjective symptom statements. As a result, this Court need not discuss all of the reasons provided by the ALJ because at least one legally sufficient reason exists. Carmickle v. Comm'r of Soc. Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008). Therefore, the ALJ's credibility finding should be affirmed.

## II. VA Disability Rating

Plaintiff contends the ALJ erred in rejecting the VA's 100% disability rating. Pl.'s Br., pp. 12-13. The ALJ "must ordinarily give great weight to a VA determination of disability." McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002). Less weight may be afforded only by providing "persuasive, specific, valid reasons for doing so that are supported by the record." Id. (citation omitted).

In May 2013, the VA granted plaintiff a 100% service-connected disability, effective February 27, 2012, for "major depressive disorder, single episode, severe without psychotic features to include panic disorder without agoraphobia as secondary to the service-connected disability of left knee strain, and tendinitis to include bilateral shin splints." Tr. 142.

The ALJ gave no weight to the VA disability rating for three reasons: (1) it was "at odds" with plaintiff's "reported activities of daily living, as well as his ability to attend college courses on a full-time basis"; (2) it failed to "identify [plaintiff's] specific limitations stemming from major depressive disorder"; and (3) the countervailing RFC and VE testimony suggested plaintiff is capable of working. Tr. 31.

As discussed above, plaintiff evinced a high level of functioning for several years following the alleged onset date of disability. This constitutes a persuasive, specific, and valid reason to afford less weight to the disability rating. McCartey, 298 F.3d at 1076. As the ALJ reasonably resolved, this evidence undermines the VA's determination. The ALJ's decision should be affirmed as to this issue.

### III. Medical Evidence

Plaintiff next asserts that the ALJ failed to provide a legally sufficient reason, supported by substantial evidence, for discrediting the medical opinion of his therapist, Ms. Brandenburg. Pl.'s Br., pp. 13-14. While only "acceptable medical sources" can diagnose and establish that a medical impairment exists, evidence from "other sources," including therapists, can help determine the severity of an impairment and how it affects the claimants' ability to work. 20 C.F.R. § 404.1513; SSR 06-03p, available at 2006 WL 2329939. The ALJ must provide a germane reason to disregard the opinion of a non-acceptable medical source. Turner v. Comm'r of Sec. Sec., 613 F.3d 1217, 1223-24 (9th Cir. 2010).

In April 2015, Ms. Brandenburg completed a check-the-box form prepared by plaintiff's attorney, in which she indicated plaintiff was "moderately limited" in his ability to: (1) "work in coordination with or proximity to others without being distracted by them"; (2) "get along with co-workers or peers without distracting them or exhibiting behavioral extremes"; (3) "interact appropriately with the public"; (4) "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable length of rest periods"; and (5) "accept instructions and to respond appropriately to criticism from supervisors." Tr. 809-11. The ALJ accepted Ms. Brandenburg's first three

findings and incorporated them into RFC, limiting plaintiff to no more than occasional, brief interactions with co-workers and no direct contact with the public. Tr. 21.

The ALJ gave little weight to the remainder of Ms. Brandenburg's opinion because: (1) it was at odds with plaintiff's daily activities; (2) it was inconsistent with her narrative responses and the overall medical record; (3) it was a "check-box" form provided by plaintiff's attorney; and (4) it "suggest[ed] very little difference between a moderate and marked limitation, and in either case [plaintiff was] found to be essentially incapable of performing the particular task/function required." Tr. 30. Inconsistency between a treating provider's opinion and claimant's daily activities qualifies as a legally sufficient reason to discount that opinion. Ghanim v. Colvin, 763 F.3d 1154, 1162 (9th Cir. 2014). Additionally, internal inconsistency within a medical report constitutes an adequate reason to afford less weight to that report. Id. at 1161 (citing Molina, 974 F.3d at 1112-12).

As addressed in Section I, the record is replete with evidence demonstrating plaintiff engaged in a wide variety of daily activities. Moreover, the record contains evidence illustrative of plaintiff's ability to accept and understand instructions and respond to criticism. Significantly, plaintiff's employment and academic history demonstrates he is capable of working in conjunction with a supervisor. As discussed herein, plaintiff was employed by the VA between 2011 and 2013. In that time, he had one negative interaction with human resources regarding another job opening; that incident did not involve a supervisor and it was unrelated to plaintiff's job performance. Tr. 472. In addition, plaintiff occasionally received negative feedback from his professors and nonetheless persevered in school. Tr. 301, 312, 315, 337, 512, 564. Finally, plaintiff successfully engaged in a variety of other activities in which he received feedback and

directions, like parent teacher conferences, volunteering at his child's school, and working with government agencies to adopt his children. Tr. 50-51, 748, 752, 764. In sum, outside of Ms. Brandenburg's report, the record suggests plaintiff can perform work consistent with the RFC.

The Court also notes that, as the ALJ found, Ms. Brandenburg's check-the-box opinion is at odds with the narrative portion of her report. Tr. 30. Significantly, Ms. Brandenburg's narrative report was equivocal and expressed uncertainty regarding plaintiff's work-related abilities. See Tr. 807 (remarking plaintiff "may be able to sustain [simple, routine] employment if the stress level and number of responsibilities is low, but I'm not sure"); see also Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 691-92 (9th Cir. 2009) (an ALJ is not required to incorporate limitations phrased equivocally into the RFC). The ALJ's evaluation of Ms. Brandenburg's opinion should be affirmed.

## IV. Lay witness testimony

Plaintiff contends the ALJ neglected to provide a germane reason to reject the lay testimony of his sister, Teena Freeman. Pl.'s Br., p. 19. Lay testimony regarding a claimant's symptoms or how an impairment affects a claimant's ability to work is competent evidence that an ALJ must consider. Molina, 674 F.3d at 1114 (citation omitted). An ALJ must provide "reasons germane to each witness" in order to reject such testimony. Id. (citation and internal quotation omitted).

In May 2014, Ms. Freeman completed a Third-Party Adult Function Report in support of plaintiff's claim. Tr. 208-16. Ms. Freeman reported plaintiff's physical impairments affect him in a variety of areas, including lifting, walking, standing, kneeling, and climbing stairs. Tr. 213. According to Ms. Freeman, plaintiff's physical impairments have psychological effects with

12 – FINDINGS AND RECOMMENDATION

regard to memory, sleep, concentration, getting along with others, anger, stress, patience, and "extreme anxiety and mood changes." Tr. 208-09, 213-14. Ms. Freeman nonetheless stated plaintiff could engage in personal care and household work. Tr. 209-10. Ms. Freeman also indicated plaintiff was independent in his ability to go out, drive, shop, and manage his finances. Tr. 211. She reported plaintiff was going to school, though he had a "hard time" due to his inability to concentrate. He was able to also visit with friends, despite becoming "short tempered," "very anti social," and having a "hard time connecting." Id.

The ALJ first denoted that Ms. Freeman's "report essentially reiterates the claimant's allegations of 'disability.'" Tr. 31. He assigned little weight to her lay statement due to plaintiff's wide range of activities and the overall medical record. Id. As addressed previously, plaintiff's activities of daily living and the lack of corroborating medical evidence constitute clear and convincing reasons, supported by substantial evidence, to reject his subjective symptom statements, and these reasons are equally applicable to the lay witness testimony. See Valentine, 574 F.3d at 694 (lay witness testimony may be disregarded on same basis as claimant's discredited subjective reports). The ALJ's decision should be affirmed as to this issue.

V.   **RFC and Step Five Finding**

Plaintiff argues the ALJ's RFC and step five finding are erroneous because they do not adequately account for the limitations described in his testimony, the VA disability rating, or the reports of Ms. Brandenburg or Ms. Freeman. The RFC is the most a claimant can do despite his limitations. 20 C.F.R. § 404.1545. In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. SSR 96-

8p, available at 1996 WL 374184. Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

As discussed herein, the ALJ appropriately weighed the evidence from plaintiff, the VA, Ms. Brandenburg, and Ms. Freeman. Accordingly, plaintiff's argument, which is contingent upon a finding of harmful error in regard to the aforementioned issues, is without merit. Bayliss v. Barnhart, 427 F.3d 1211, 1217-18 (9th Cir. 2005). The ALJ's RFC and step five finding should be upheld.

## RECOMMENDATION

The Commissioner's decision should be AFFIRMED and this case should be DISMISSED. This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 25th day of April 2017.

    s/Jolie A. Russo
JOLIE A. RUSSO
United States Magistrate Judge